# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE CINCINNATI INSURANCE
COMPANY, INC.

      **Plaintiff,**

v.

HARBINGER, LLC d/b/a
BREWERY EMPERIAL,

      **Defendant.**

Case No. 20-2612-DDC-ADM

## MEMORANDUM AND ORDER

This Order rules the pending motion: Defendant's Motion to Dismiss for Lack of

Personal Jurisdiction, Lack of Service of Process and Improper Venue or for Transfer to the

Western District of Missouri (Doc. 13). For reasons explained below, the court concludes that

plaintiff hasn't shouldered its burden to establish that this court has personal jurisdiction over

defendant. But in lieu of dismissing the case for that reason, the court transfers it to the Western

District of Missouri under 28 U.S.C. § 1406(a).[1]

## I.    Factual and Procedural Background

### A.    Factual Background

Because this matter is before the court, at least in part, on a motion to dismiss for lack of

personal jurisdiction, all well pleaded factual allegations in plaintiff's Complaint for Declaratory

---

[1] For purposes of subject matter jurisdiction to enter this Order, the court accepts as true these well-pleaded factual allegations in the Complaint for Declaratory Judgment: (1) plaintiff is a citizen of Ohio because it is incorporated in Ohio and has its principal place of business in Ohio, (2) defendant is an LLC whose members are residents of Kansas, Missouri, and Oregon, and (3) thus subject matter jurisdiction exists, as alleged, under 28 U.S.C. § 1332. *See* Doc. 1 (Compl) (¶¶ 1, 2, 5); *see also* Doc. 14 at 14 ("While Defendant may 'reside' in Kansas for purposes of diversity subject matter jurisdiction, it does not 'reside' in Kansas for purposes of general personal jurisdiction.").

Judgment (Doc. 1), to the extent they are uncontroverted by affidavits or other written evidence, are accepted as true and viewed in the light most favorable to plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If the parties provide conflicting affidavits, the court must resolve those factual disputes in plaintiff's favor. *Id.*

Plaintiff Cincinnati Insurance Company, Inc. (Cincinnati) is an Ohio corporation, and its principal place of business is in Ohio. Doc. 1 at 1 (Compl. ¶ 1). Defendant Harbinger, LLC (Harbinger) operates a brewery located in downtown Kansas City, Missouri. *Id.* at 2 (Compl. ¶ 12). In December 2019, Cincinnati issued an insurance policy to Harbinger covering business property owned by Harbinger. *Id.* (Compl. ¶¶ 7, 11). According to a "Schedule of Locations" included with the contract of insurance, the insurance coverage involves an address located in downtown Kansas City, Missouri.[2] *Id.* at 3 (Compl. ¶ 13); *see also* Doc. 1-1 at 3. This address is the location of Harbinger's brewery, Brewery Emperial. *Id.* at 2 (Compl. ¶ 12) ("Harbinger operates a brewery and restaurant named Brewery Emperial located . . . in Kansas City, Missouri[.]").

In August 2020, Harbinger filed an insurance claim with Cincinnati which "claim[ed] business interruption due to COVID." *Id.* at 3 (Comp. ¶ 14). According to the Complaint, Cincinnati and Harbinger spoke by phone on the same day, and a contact person with Harbinger explained the business was forced "to shut down" because of the ongoing COVID-19 pandemic. *See id.* (Compl. ¶ 15). For much of 2020, Harbinger's brewery either was shuttered or open for business in a restricted capacity—all due to the COVID-19 pandemic. *See, e.g.*, *id.* at 4 (Compl. ¶ 24) ("Harbinger claims that, beginning on or about March 12, 2020, while the aforesaid policy was in full force and effect, Harbinger sustained direct physical loss as a result of 'emergency

---

[2]  The Schedule of Locations does not mention any other properties or addresses. *See* Doc. 1-1 at 3.

proclamations' that 'ordered restaurants to end in-restaurant dining [ . . . ] due to the Covid-19 pandemic.'").

Harbinger's insurance claim attributed "direct physical loss" to the COVID-19 pandemic and related local ordinances requiring the business to halt or restrict its operations. *Id.*; *see also id* (Compl. ¶ 25) ("Harbinger further claimed that other emergency proclamations constitute direct physical loss and 'severely limited the number of patrons permitted inside the building, due to the Covid-19 panic.'"). Cincinnati requested additional information from Harbinger about its claim. *Id.* at 3 (Compl. ¶ 17). "Cincinnati did not receive a response from Harbinger . . . and sent follow-up letters to Harbinger" in September and October 2020. *Id.* (Compl. ¶ 19). In October 2020, an attorney working for Harbinger responded to Cincinnati with a letter representing "a claimed profit and loss statement" from March and October 2020. *Id.* (Compl. ¶ 21). This letter also included information about local ordinances mandating business closures, but it did not include the information or documents Cincinnati had requested. *Id.* at 4 (Compl. ¶¶ 22–23).

In a letter dated October 30, 2020, Cincinnati denied Harbinger's insurance claim. *Id.* at 4 (Compl. ¶¶ 26–28); *see also* Doc. 1-3 at 1 ("Cincinnati has determined that coverage is unavailable for the claimed loss."). According to the Complaint, "Harbinger's claim does not satisfy the Policy's insuring agreement." *Id.* at 5 (Compl. ¶ 31); *see also id.* (Compl. ¶ 36) ("There is no coverage for Harbinger's claims pursuant to the provisions, terms, and conditions of the Policy's Coverage Extensions for Business Income and Extra Expense."). "There is no coverage here because there was no direct physical loss at the premises[,]" and "even assuming that there was direct physical loss, coverage would be excluded by the Policy's Pollution Exclusion." *Id.* at 6 (Compl. ¶ 39); *see also* Doc. 1-3 at 6 (attaching a copy of October 30, 2020

3

letter from Cincinnati to Harbinger stating that "the Policy's Exclusions section . . . excludes from coverage" any claimed loss "caused by or resulting from" pollutants.

### B.     Procedural Background

Cincinnati filed its Complaint for Declaratory Judgment on December 7, 2020. *See* Doc. 1 (Compl.). In January 2021, Harbinger filed its Motion to Dismiss for Lack of Personal Jurisdiction, Lack of Service of Process and Improper Venue or for Transfer to the Western District of Missouri (Doc. 13). The motion is fully briefed. *See* Docs. 14, 20, 24; *see also* Doc. 25 (attaching Harbinger's Notice of Supplemental Authority). In short, Cincinnati's Complaint for Declaratory Judgment asks this court to declare "[t]hat there is no coverage under the policy" for the losses Harbinger claims. Doc. 1 at 7 (Compl. ¶ 50A).

In an ironic twist, Cincinnati's suit in our court served as a harbinger of Harbinger's reaction to the insurer's letter. Just three days after Cincinnati filed its Complaint for Declaratory Judgment in our court, Harbinger filed a lawsuit in the Western District of Missouri.[3] *See* Compl. and Demand for Jury Trial, *Harbinger, LLC d/b/a Brewery Emperial v. The Cincinnati Ins. Co., Inc.*, No. 4:20-cv-00968-BP (W.D. Mo. Dec. 10, 2020), ECF No. 1. This action names Cincinnati as the lone defendant. *See id.* These lawsuits overlap substantially. *See id.* at 1 (Compl. ¶ 1) ("This lawsuit arises from [Cincinatti's] failure to pay pursuant to a policy of insurance for losses sustained and expenses incurred by [Harbinger] due to the COVID-19 virus and related orders from civil authorities."). In other words, our court's plaintiff is the Western District of Missouri's defendant, and our court's defendant is the other court's plaintiff.

---

[3]     On a motion to dismiss, the court may take judicial notice of public records from other proceedings without converting the motion into one seeking summary judgment. *Tri-State Trucks Ins., Ltd. v. First Nat'l Bank of Wamego*, 931 F. Supp. 2d 1120, 1123 (D. Kan. 2013) (citations omitted); *see also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

4

In the Western District of Missouri's version of this conflict, Chief Judge Phillips already has denied Cincinnati's motion seeking to transfer the case to our district, or otherwise dismiss or stay the proceedings. *See* Order Denying Mot. to Transfer, Dismiss, or Stay, *Harbinger, LLC d/b/a Brewery Emperial v. The Cincinnati Ins. Co., Inc.*, No. 4:20-cv-00968-BP (W.D. Mo. Apr. 4, 2021), ECF No. 25. Chief Judge Phillips reasoned that "the interests of justice" favored denying Cincinnati's request because "the suit arises from a Missouri insurance policy to which Missouri law will likely apply[,]" all of which favor keeping the case in the Western District of Missouri. *Id.* at 4 (internal quotation marks omitted).

## II. Legal Standards

Harbinger "moves pursuant to the Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(5) to dismiss this action for lack of personal jurisdiction, improper venue, and insufficient service of process, or, in the alternative, for transfer pursuant to 28 U.S.C. Section 1404(a)." Doc. 13 at 1. In this Order, the court concludes that personal jurisdiction is lacking. Below, the court identifies the legal standards governing this question.

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs a claim for dismissal on the basis that personal jurisdiction is lacking. A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014) (citation omitted). But in the preliminary stages of litigation, a plaintiff's burden to prove personal jurisdiction is light. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).

5

Where, as here, the court is asked to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, plaintiff, to defeat the motion, must make no more than a prima facie showing of jurisdiction. *Id.* at 1056–57 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091.

To defeat a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). When the defendant fails to controvert plaintiff's allegations with affidavits or other evidence, the court must accept the well-pleaded allegations in the complaint as true, and resolve any factual disputes in the plaintiff's favor. *Wenz*, 55 F.3d at 1505.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A). In a diversity action like this one, a plaintiff must show that exercising jurisdiction is proper under the laws of the forum state and that doing so comports with the Constitution's due process requirements. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994) (citation omitted).

Kansas's long-arm statute is construed liberally to permit any exercise of jurisdiction that is consistent with the United States Constitution. *Id.* at 1305; *see also* Kan. Stat. Ann. § 60-308(b)(1)(L) & (b)(2). Thus, it's unnecessary for the court to conduct a separate personal jurisdiction analysis under Kansas law, and instead, the court may proceed directly to the due

6

process inquiry. *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305; *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (explaining that where a state's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis" (internal quotation marks and citation omitted)).

The due process analysis involves a two-step inquiry. *First*, the court must determine whether the defendant has "minimum contacts with the forum state such that he should reasonably anticipate being haled into court there." *AST Sports Sci., Inc.*, 514 F.3d at 1057 (internal quotation marks and citation omitted). *Second*, if the defendant's actions establish such minimum contacts, the court then must decide "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citations omitted).

### 1. Minimum Contacts

The Due Process Clause permits exercising personal jurisdiction over a nonresident defendant so long as the defendant purposefully has established "minimum contacts" with the forum state. *Burger King*, 471 U.S. at 474. The "minimum contacts" standard is satisfied by establishing either (1) specific jurisdiction or (2) general jurisdiction. *Rockwood Select Asset Fund*, 750 F.3d at 1179. A court may assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings, Inc.*, 149 F.3d at 1090–91 (internal quotation marks and citation omitted). Alternatively, if "a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the

7

court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state." *Id.* at 1091 (citation omitted).

### a. Specific Jurisdiction

A court may exercise specific jurisdiction if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state and (2) the plaintiff's injuries arose from those purposefully directed activities. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted). Our Circuit analyzes the "purposefully directed" requirement differently depending on the cause of action alleged. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* (citations omitted). "In all events, the shared aim of [the] 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

The Supreme Court has explained that the "inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citation omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. In *Walden*, the Court emphasized two required aspects of the

8

defendant's relationship with the forum state for a court to exercise jurisdiction over a nonresident defendant. *Id.* at 284–86. The two aspects are related. *See id.*

*First*, the relationship between the defendant and the forum state "must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 284 (internal quotation marks and citation omitted). "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* (citation omitted). Consistently, the Supreme Court has "rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State." *Id.* (citation omitted). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* at 285 (internal quotation marks and citation omitted).

*Second*, the "minimum contacts analysis" must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citation omitted). Thus, the Supreme Court has found personal jurisdiction exists "over defendants who have purposefully 'reach[ed] out beyond' their State and into another [state] by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 479–80). The Supreme Court also has upheld assertions of jurisdiction where a defendant "circulat[ed] magazines to 'deliberately exploit[t]' a market in the forum State." *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)). Additionally, and although "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* (citation omitted). But, a

9

plaintiff "cannot be the only link between the defendant and the forum." *Id.* "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285–86 (citation omitted). To put it another way, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 (citation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

### b. General Jurisdiction

Courts may exercise jurisdiction under the general jurisdiction prong if a defendant's contacts with the forum state are "'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction doesn't arise directly from a defendant's forum-related activities; instead, the court may assert general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state. *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation omitted). But, because general jurisdiction isn't related to the particular events giving rise to the suit, courts must impose "a more stringent minimum contacts test" before asserting general jurisdiction, one that "requir[es] the plaintiff to demonstrate the defendant's continuous and systematic general business contacts" with the forum state. *Id.* (internal quotation marks and citations omitted).

When considering a business entity's contacts with a forum for purposes of determining whether it's appropriate to invoke general jurisdiction:

courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Trierweiler v. Croxton Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

## 2. Fair Play and Substantial Justice

Even when a defendant's actions present sufficient minimum contacts for personal jurisdiction, courts still must decide whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271 (internal quotation marks and citation omitted). "'Such cases are rare.'" *Id.* (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)). "The defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). To determine whether the exercise of jurisdiction is unreasonable, courts consider these five factors:

(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

## III. Analysis

The following analysis applies these legal principles to the governing facts. For reasons it explains, the court concludes that personal jurisdiction is lacking in this case—both under specific and general jurisdiction principles. So, the court's analysis focuses on these issues.

11

## A.     Specific Jurisdiction Over Harbinger

Harbinger argues that specific jurisdiction "is lacking here because there is no nexus between the insurance dispute and any of [Harbinger's] *de minimis* Kansas-related contacts—less than $2,500 in small keg sales through a distributor since January 1, 2020."  Doc. 14 at 2; *see also id.* at 16 ("While Harbinger . . . purposefully explored limited distribution activities in Kansas, those minimum contacts have nothing to do with this declaratory judgment action or the Missouri-related insurance claims at issue here in the pending Missouri litigation." (citation omitted)).  In Harbinger's view, this insurance dispute "simply do[es] not arise, in any way, out of Harbinger, LLC's limited Kansas distribution business." *Id.* at 16–17.  Plus, Harbinger argues, "even if [Cincinnati] were able to make a prima facie showing to meet the nexus requirement, exercise of jurisdiction would offend traditional notions of fair play and substantial justice." *Id.* at 17.

Cincinnati sees things differently.  It argues, in response, that "Harbinger is . . . subject to specific personal jurisdiction in Kansas."  Doc. 20 at 14.  Cincinnati's arguments on this front embrace two different lines of reasoning.  Below, the court addresses each of them in turn.

### 1.  The Kansas Registration Statute

Cincinnati observes that Kansas law requires alcohol distributors to secure a license with the state before they may conduct business in Kansas.  *Id.* at 16; *see also* Kan. Stat. Ann. § 41-313 (providing for "[l]icensing of corporations; conditions; appointment of agent to receive service of process; consent to jurisdiction and forum of Kansas courts" for alcohol distributors).  And, this law requires "[e]very nonresident applicant" for a distribution license to provide its consent to jurisdiction by the state courts of Kansas.  Kan. Stat. Ann. § 41-313(b).  But as Cincinnati sees things, "Harbinger sought and obtained a Kansas liquor license" and, so, it

"signed an Irrevocable Consent to Jurisdiction." Doc. 20 at 16. As Harbinger sees things, the company's agreement to follow "Kansas procedures for distributing beer in Kansas does not create a reasonable expectation on the part of Harbinger, LLC of being haled to court in Kansas over an insurance claim related to the loss of business at its home base restaurant and brewery in Missouri." Doc. 14 at 17.

The statute at issue, although broad in its sweep, still isn't so expansive that it necessarily supports a finding of specific jurisdiction—at least not on the facts alleged here. According to the Kansas law, consent to jurisdiction applies "in the proper court of any county in this state in which the cause of action shall arise or in which the plaintiff may reside[.]" Kan. Stat. Ann. § 41-313(b). So, it's a menu with two options. And here, only one option can apply because the plaintiff doesn't reside in Kansas. *See id.*; *see also* Doc. 1 at 1 (Compl. ¶ 1) ("The Cincinnati Insurance Company, Inc., is an Ohio corporation, with its principal place of business in Cincinnati, Ohio.").

This leaves just one jurisdictional hook—at least on the basis of this state law. Harbinger argues that Cincinnati's "action for declaratory judgment . . . does not arise in Kansas" because the "only insured property is a Missouri property." Doc. 14 at 18. Also, the policy "makes no reference to Kansas law or property or business[,]" whereas the policy references Missouri law repeatedly. *Id.*; *see also* Doc. 6 at 6, 133, 157, 175, 205, 227. Perhaps most of all, Harbinger says, the entire basis for the disputed insurance claim centers exclusively on its Missouri brewery. The dispute, it argues, has nothing to do with its limited alcohol distribution in Kansas. *See, e.g.*, Doc. 14 at 16 (arguing that Harbinger's "limited distribution activities in Kansas" don't relate to "this declaratory judgment action or the Missouri-related insurance claims at issue here").

13

Harbinger has the better end of the argument. "[W]hether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotation marks and citation omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. Thus, specific jurisdiction would exist where (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state and (2) the plaintiff's injuries arose from those purposefully directed activities. *Newsome*, 722 F.3d at 1264 (citation omitted).

This is a contract dispute about losses Harbinger allegedly sustained at its brewery in Missouri because of the COVID-19 pandemic and local Missouri ordinances arising from that pandemic, ordinances which forced Harbinger to close or limit its brewery's operations. *See, e.g.*, Doc. 1 at 4 (Compl. ¶¶ 24–25) (describing Harbinger's insurance claim to Cincinnati based on "direct physical loss as a result of 'emergency proclamations' that 'ordered restaurants to end in-restaurant dining[,]'" and noting that "Harbinger further claimed that other emergency proclamations constitute direct physical loss" because each of them "'severely limited the number of patrons permitted inside the building, due to the Covid-19 panic'"); *see also* Doc. 6 at 7 (listing only a Missouri property as included under the insurance policy). That Harbinger also secured a license to distribute alcohol in Kansas did not create a nexus between Harbinger's activities in Kansas and the dispute at issue here.

## 2. The Conflict Over Which State Law Governs the Contract

Cincinnati also argues that Kansas law applies to the contract because the policy was finalized in Kansas, not Missouri.[4]  *See* Doc. 20 at 16–18.  Cincinnati reasons that Harbinger's insurance agent—located in Lawrence, Kansas—accepted delivery of the policy; under Kansas choice-of-law rules, this sequence of events means that Kansas law governs the contract's interpretation.  *Id.*; *see also id.* at 17 ("'When a policy is requested through a broker acting for a client and the policy is effective on delivery, the place of contracting is where the policy is posted or delivered to the broker.'" (quoting *Layne Christensen Co. v. Zurich Can.*, 38 P.3d 757, 768 (Kan. Ct. App. 2002))).  Harbinger effectively refutes this argument.  *See* Doc. 24 at 2–3 ("If the insurance policy is delivered to an agent [rather than a broker], then 'the place of contracting is where the policy is delivered to the insured.'" (quoting *Layne Christensen Co.*, 38 P.3d at 768)).  The court rejects Cincinnati's argument for two reasons.

*First*, the question whether Kansas or Missouri law applies to the contract dispute might influence the question whether specific jurisdiction exists over Harbinger, but it isn't the primary influence.  Instead, the point of the personal jurisdiction analysis is to ensure a defendant's federal due process rights are protected against a "State's coercive power[.]"  *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 918–19 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  And *second*, Cincinnati actually hasn't demonstrated that a broker, rather than an agent, was involved in this insurance transaction.  To be sure, it argues this point.  *See* Doc. 20 at 16 (asserting that "Harbinger requested [and received] the Policy through IMA Select, LLC[,]" which is located in Overland Park, Kansas, meaning the "place of delivery, Overland

---

[4]  "'A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state.'"  *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (quoting *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994)).

Park, Kansas, is the place of contracting"). But, as Harbinger points out, Cincinnati's own papers never reference an insurance broker. *See* Doc. 24 at 3.

Instead, Cincinnati's filings (and the contract, too) only reference an insurance "agent" or "agency." *See id.* ("According to Cincinnati's own declaration by its Assistant Secretary in Commercial Lines Administration . . . the 'Policy was delivered to Harbinger by sending the policy regular U.S. mail to Harbinger's insurance *agent* . . . in Overland Park, Kansas.'" (quoting Doc. 20-1 at 1 (Lynn Decl.))) (emphasis added); *see also* Doc. 20-3 at 1 (describing this intermediary business under the heading "Agency Information"). The court therefore can't accept Cincinnati's assertion that its papers supply a basis for the court to conclude that an insurance broker—not an agent—assisted Harbinger with the policy. Likewise, Cincinnati hasn't shown or suggested that anyone other than a managing member of Harbinger ever was authorized to execute the contract on Harbinger's behalf. *See* Doc. 24 at 4–5; *see also* Doc. 6 at 3, 21 (showing a copy of the insurance policy without signatures from any "authorized representative"). So, even assuming all factual assertions in the Complaint for Declaratory Judgment are true—as the court must at this juncture—the Complaint doesn't even assert what Cincinnati argues it does. To the contrary, and assuming its contents are true, the Complaint describes an insurance agent, not a broker. *See, e.g.*, Doc. 1 at 2 (Compl. ¶ 9) ("The Policy was delivered to Harbinger by delivering a copy of the Policy to Harbinger's insurance *agent* . . . in Overland Park, Johnson County, Kansas." (emphasis added)).

Cincinnati bears the burden to establish jurisdiction over Harbinger. *Rockwood Select Asset Fund XI (6)-1, LLC*, 750 F.3d at 1179–80 (citation omitted). And though that burden is light, it's still a burden. *AST Sports Sci., Inc.*, 514 F.3d at 1056 (citation omitted). If the question whether Kansas law applies to this contract also would answer the question whether

16

personal jurisdiction exists, one would expect Cincinnati to summon specific details to prove its point. It hasn't. The court can't conclude that Harbinger's insurance agent was a broker when neither the contract at issue nor Cincinnati's papers articulate any basis for that conclusion.

### B. General Jurisdiction Over Harbinger

Harbinger also argues that there's no basis supporting general jurisdiction in this case because the company's "contacts with the state of Kansas are minimal[,]" and they "represent a miniscule source of revenue for the company, which conducts virtually all of its business in Missouri." Doc. 14 at 13 (citing Doc. 14-4 at 2 (Thompson Decl.)). Cincinnati disagrees. *See* Doc. 20 at 8 ("Harbinger admits that it signed an Irrevocable Consent to Jurisdiction, but argues . . . the exercise of general jurisdiction in such instance violates due process."). The court agrees with Harbinger that general personal jurisdiction is lacking.

Cincinnati's claimed basis for general jurisdiction is the same Kansas statute discussed in detail, above. *See* Kan. Stat. Ann. § 41-313(b). And as the court already explained, that law offers a two-option menu for jurisdiction via registration. Either (1) the plaintiff must reside in Kansas or (2) the cause of action must arise there. *Id.* Here, there's really just one option on the menu in this case because plaintiff is an Ohio corporation with its principal place of business in Ohio. *See* Doc. 1 at 1 (Compl. ¶ 1). The remaining option—"the proper court of any county in this state in which the cause of action shall arise"—speaks of a direct connection to the lawsuit at hand. *See* Kan. Stat. Ann. § 41-313(b). And as such, it sounds in specific, rather than general, jurisdiction. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) ("Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." (citation omitted)). Here, whether Harbinger signed up for a Kansas liquor distribution license has

nothing to do with the insurance policy—wherever it was formed—the claimed losses (which arose only in Missouri), or whether Cincinnati promised to cover those losses. This route won't work for Cincinnati.

And regardless, the court heeds the words of our Supreme Court that courts "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Even a "corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that a corporation be amenable to suits unrelated to that activity.'" *Id.* at 927 (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

Here, it isn't a question whether Harbinger sought and received a license to distribute alcohol in Kansas. *Compare* Doc. 20 at 2 ("Harbinger expressly and voluntarily consented to jurisdiction in the State of Kansas by signing an Irrevocable Consent to Jurisdiction[.]"), *with* Doc. 14 at 17 ("Following the Kansas procedures for distributing beer in Kansas does not create a reasonable expectation on the part of Harbinger, LLC of being haled to court in Kansas over an insurance claim related to loss of business at its home base restaurant and brewery in Missouri."). What is uncertain is whether Harbinger's registration with the state of Kansas to distribute alcohol there consequently confers general jurisdiction. *See id.*

The general jurisdiction analysis requires more than the question whether specific jurisdiction may be had. *See Old Republic Ins. Co.*, 877 F.3d at 904 ("Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and

systematic general business contacts." (internal quotation marks and citation omitted)).

"Although the placement of a product into the stream of commerce 'may bolster an affiliation

germane to *specific* jurisdiction,'" the Supreme Court has explained, "'such contacts 'do not

warrant a determination that, based on those ties, the forum has *general jurisdiction* over a

defendant.'" *Daimler*, 571 U.S. at 132 (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564

U.S. at 927).

Here, Cincinnati argues general jurisdiction exists for a reason having nothing to do with

the present dispute. *See* Doc. 20 at 8 (arguing that general jurisdiction exists on the basis of Kan.

Stat. Ann. § 41-313(b)). And that approach—at least generally—isn't the problem. After all,

general jurisdiction exists where the basis *doesn't* relate to the conflict at hand. *See Goodyear*

*Dunlop Tires Operations, S.A.*, 564 U.S. at 927. But Cincinnati still approaches the issue from

the wrong direction. Harbinger's license to sell alcohol in Kansas doesn't confirm that its

contacts with the state are "continuous and systematic[.]" *Int'l Shoe Co.*, 326 U.S. at 317. And

the fact that Harbinger sold some beer in Kansas doesn't either.

This is so because merely sending a product into a state's "stream of commerce" doesn't

point toward general jurisdiction at all. *Daimler*, 571 U.S. at 132 (citation omitted). And even if

it did, there's a meaningful difference between securing a license to do something and what one

actually does with that license. Here, if Harbinger used its distribution license to sell large

portions of its inventory in Kansas, the company *might* then "'essentially [be] at home in the

forum State.'" *Old Republic Ins. Co.*, 877 F.3d at 904 (quoting *Goodyear Dunlop Tires*

*Operations, S.A.*, 564 U.S. at 919). But Cincinnati relies on some $2,000 worth of beer sales in

Kansas since the beginning of 2020. Doc. 20 at 13 (citing Doc. 14 at 3). And, Cincinnati asks

the court to assume these figures constitute an incomplete portrait of Harbinger's total sales in

Kansas and presume that Harbinger's "2019 sales in the State of Kansas were of sufficient amount to support the exercise of general jurisdiction[.]"  *Id.* at 13–14.

In contrast, Harbinger's papers include a Declaration from Keith Thompson, one of Harbinger's owners.  He testifies that "[v]irtually all of [Harbinger's] sales occur at [its] Missouri premises or other Missouri establishments."  Doc. 14-4 at 2 (Thompson Decl. ¶¶ 1, 10); *see also id.* ("Since the onset of the pandemic to present, we sold approximately 40 small . . . kegs to a distributor for distribution in Kansas, totaling approximately $2,340 in sales, representing a miniscule amount of our overall sales.").  These figures don't qualify as a continuous and systematic business presence in Kansas such that general jurisdiction would attach.  Even if these financial figures somehow sharply underrepresent Harbinger's sales in Kansas—which Cincinnati has supplied no reason to suspect—other courts have required far more from out-of-state companies to hold that general jurisdiction existed.  *See* Doc. 24 at 5 (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629–30 (2d Cir. 2016) (concluding that defendant corporation's three-decades long presence in the forum state involving 30 or more employees and about $160 million in revenue still didn't establish general jurisdiction because these figures "represented less than 0.05% of Lockheed's full workforce" and "never exceeded 0.107% of the company's total annual revenue")).

Here, the financial figures are even smaller, but the point is the same:  they come nowhere near the lion's share of Harbinger's business revenues.  *See* Doc. 14 at 13 (explaining that Harbinger's "contacts with the State of Kansas are minimal" and they "represent a miniscule source of revenue for the company, which conducts virtually all of its business in Missouri" (citing Doc. 14-4 (Thompson Decl.))).  Cincinnati hasn't shown that general jurisdiction is appropriate in this case.  *See Daimler*, 571 U.S. at 122 ("[A] court may assert [general]

20

jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State . . . are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919)). Harbinger isn't at home in Kansas.

### C. Other Considerations

#### 1. Fair Play and Substantial Justice

Even if the court agreed with Cincinnati that personal jurisdiction was proper—and to be clear, it doesn't—the court also would have to ask whether exercising jurisdiction "would offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271 (internal quotation marks and citation omitted). Our Circuit has described qualifying cases as "rare." *Id.* (internal quotation marks and citation omitted). But this description doesn't mean that there are no qualifying cases.

To determine whether exercising jurisdiction would run offend these notions, the court considers several factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 113). In this case, more factors than not counsel against exercising jurisdiction. From the factors specified in *OMI Holdings, Inc.*, the second, fourth, and fifth factors counsel against exercising jurisdiction. *See id.* Thus, a majority of the factors show that exercising jurisdiction—if it existed—would offend this fundamental concern for fairness and justice. *See id.*

The second factor in *OMI Holdings, Inc.* favors declining jurisdiction if it existed. The court can't agree that this forum has a significant interest in resolving this dispute. "'States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.'" *AST Sports Sci., Inc.*, 514 F.3d at 1062 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1096). Here, neither of the parties is a Kansas resident. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* (internal quotation marks and citation omitted). As recited above, Cincinnati tried but fell far short of convincing the court that the forum state's laws would apply, either through the registration statute or Kansas contract law.

The fourth factor likewise counsels against exercising jurisdiction. This presents a concern whether exercising jurisdiction would create tension with "the interstate judicial system's interest[] in obtaining the most efficient resolution of controversies[.]" *OMI Holdings, Inc.*, 149 F.3d at 1095 (citation omitted). "This factor asks 'whether the forum state is the most efficient place to litigate the dispute.'" *AST Sports Sci., Inc.*, 514 F.3d at 1062 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097). "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings, Inc.*, 149 F.3d at 1097 (citations omitted). Here, one is far more likely to find witnesses in Missouri than in Kansas, but the court takes judicial notice, as it may, that the two districts are adjacent to one another. *See Hastey on behalf of YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1059 (D. Kan. 2020) ("A federal court may take judicial notice of 'a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned.'" (quoting Fed. R. Civ. P. 201(b))). Indeed, a person of average eyesight and geographical acumen can view one of the Western District's courthouses from one of our district's courthouses. More importantly, it's obvious that any "wrong underlying the lawsuit occurred" in Missouri, the only location where Harbinger claims it sustained a loss from COVID-19's effects and related local ordinances. *OMI Holdings, Inc.*, 149 F.3d at 1097 (citation omitted). The court already has concluded that Cincinnati hasn't shouldered its burden to prove that Kansas law applies to the contract, so the consideration from *OMI Holdings* about state law doesn't matter much in this case. *See id.* at 1097 (citation omitted).

And under the fifth factor identified in *OMI Holdings, Inc.*, the court again finds good reason to decline jurisdiction even if it existed in the first place. The court must ask "whether the exercise of personal jurisdiction by Kansas affects the substantive social policy interests of other states or foreign nations." *OMI Holdings, Inc.*, 149 F.3d at 1097 (citation omitted). "Relevant facts include whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident." *AST Sports Sci., Inc.*, 514 F.3d at 1063 (internal quotation marks and citation omitted). Construing this guidance to fit out-of-state parties, (1) "one of the parties is a citizen of the foreign [state]," (2) "whether the foreign [state's] laws governs the dispute" is a question answered already by the Western District of Missouri (it ruled that Missouri law likely would apply), and (3) the out-of-state defendant, at least in the context of this insurance claim, wasn't conducting business with a forum resident. *Id.* (internal quotation marks and citations omitted); *see also* Doc. 25-1 at 6 ("[T]he suit arises from a Missouri insurance policy to which Missouri law will likely apply[.]" (citation omitted)). Finally, this insurance dispute presents a timely question: whether a business may collect insurance benefits on the

23

basis of losses sustained during the COVID-19 pandemic.  The insured property in this case is located in Missouri, and the court suspects that Missouri's courts have an appropriate and special interest in answering this question.  This factor disfavors our court exercising jurisdiction.

In sum, three of the five factors that courts must consider in this context show that our court's interest in exercising jurisdiction—if jurisdiction even existed—are outweighed by factors suggesting that exercising jurisdiction "would offend traditional notions of fair play and substantial justice."  *Newsome*, 722 F.3d at 1271 (internal quotation marks and citation omitted).  The other two factors either are irrelevant or can't tip the balance in Cincinnati's favor.

### 2.  Venue and Transfer Under 28 U.S.C. § 1406(a)

Where personal jurisdiction is lacking, so too is proper venue.  *See* 28 U.S.C. § 1391 (providing that venue may be had in any district where the defendant is subject to personal jurisdiction).  Because the court concludes that personal jurisdiction doesn't exist in Kansas under the facts presented by this case, Cincinnati's claims also are subject to dismissal for lack of proper venue.  *See id.*; *see also In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 2866166, at *8 ("Accordingly, because personal jurisdiction is lacking here, these plaintiffs' claims are also subject to dismissal for lack of venue, and the underlying motion to dismiss is granted on that basis as well.").

But rather than dismiss Cincinnati's Complaint for Declaratory Judgment outright, the court chooses another available tool.  "It is well-established that the court, in the interests of justice, may cure improper venue by transferring the case to 'any district or division in which it could have been brought.'"  *Elec. Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F. Supp. 1172, 1177 (D. Kan. 1996) (quoting 28 U.S.C. § 1406(a)).  "Additionally, the court may transfer a case to a district where venue is proper even if the court lacks personal jurisdiction

24

over the defendant." *Id.* (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)); *see also* Doc. 14 at 19 n.4 (referencing the same proposition (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) (further citations omitted))).  Because 28 U.S.C. § 1406(a) is the proper transfer mechanism where the transferor court lacks personal jurisdiction, the court will transfer the case to the Western District of Missouri under this provision.  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 n.3 (10th Cir. 1991) (explaining the distinction between venue transfer under 28 U.S.C. § 1404(a) and § 1406(a) and remarking that "in the case of § 1406(a), the transferor court lacks venue and *must* transfer the action in order for it to proceed").

## IV.    Conclusion

Cincinnati's construction of the Kansas registration statute and the insurance policy itself can't save this lawsuit from its dominant characteristic:  it has, at best, an attenuated connection to Kansas.  Also, Cincinnati loses nothing with this outcome.  It can press its construction of the insurance contract to Chief Judge Phillips in the Western District of Missouri.

The court concludes that neither specific nor general personal jurisdiction exists over Cincinnati's claims against Harbinger.  So, the court grants in part and denies in part Harbinger's Motion to Dismiss for Lack of Personal Jurisdiction, Lack of Service of Process and Improper Venue or for Transfer to the Western District of Missouri (Doc. 13).  Under the authority provided by 28 U.S.C. § 1406(a), the court transfers this case to the Western District of Missouri.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Lack of Service of Process and Improper Venue or for Transfer to the Western District of Missouri (Doc. 13) is granted in part and denied in part.

25

**IT IS FURTHER ORDERED BY THE COURT THAT** this case is transferred to the

Western District of Missouri under 28 U.S.C. § 1406(a).

**IT IS SO ORDERED.**

**Dated this 22nd day of July, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
